**E-FILED on** ___4/2/10___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re EXTREME NETWORKS, INC. SHAREHOLDER DERIVATIVE LITIGATION<br><br>———————————————————<br><br>This Document Relates To:<br><br>ALL ACTIONS | No. C-07-02268-RMW<br><br>ORDER DENYING EXTREME'S MOTION FOR RECONSIDERATION AND FOR STAY OF ACTION AND CERTIFICATION OF APPEAL<br><br>**[Re Docket No. 112, 114]** |

    Nominal defendant Extreme Networks, Inc. ("Extreme") moves for reconsideration of the court's November 17, 2009 order denying Extreme's motion to strike and motion to dismiss the Third Amended Complaint. In the alternative, Extreme moves for a stay and certification of the issue for interlocutory appeal. For the reasons set forth below, the court denies both motions.

## I. BACKGROUND

    In April and May 2007, Extreme shareholders brought three derivative lawsuits on behalf of Extreme, against certain current and former directors and officers of Extreme, asserting violations of federal securities and state laws. These suits were brought without any prior demand on Extreme's board of directors. On August 2, 2007, the court consolidated these actions. On October 11, 2007,

plaintiffs filed the First Amended Complaint ("FAC").  Extreme moved to dismiss the FAC, and the parties then stipulated to allow plaintiffs to file a Second Amended Complaint ("SAC").

Extreme moved to dismiss the SAC for failure to make demand against the company or to plead with particularity that demand should be excused.  On August 12, 2008, the court held that the SAC failed to specifically allege facts creating a reasonable doubt that a majority of Extreme directors were disinterested and independent and thus dismissed the SAC with leave to amend.  In its August 12, 2008 order ("Aug. Order"), the court rejected plaintiffs' argument that Kenneth Levy, one of the members of Extreme's board of directors at the time suit was filed, was interested based on an October 22, 2001 stock option grant he received, finding that the SAC failed to allege facts raising a reasonable inference that this grant was backdated.  Aug. Order at 14.

Plaintiffs sought reconsideration of the Aug. Order, complaining in part that the court did not discuss in its order their allegations about Levy's board position at other companies facing backdating allegations in other lawsuits.  On September 23, 2008, the court denied plaintiffs' motion for reconsideration.  In its September 23, 2008 order ("Sept. Order"), the court noted in a footnote that it had not expressly cited facts relating to Levy's position at other companies in its previous order because "the court did not find them critical to its decision." Sept. Order at 3 n.1.

On September 21, 2008, plaintiffs filed the Third Amended Complaint ("TAC").  The TAC alleges that Levy was interested because: (1) he received backdated options, (2) he served on the Compensation Committee, (3) he served on the Audit Committee, and (4) he was implicated in backdating at two other companies.  Extreme moved to dismiss the TAC for failure to plead with particularity that demand should be excused.

On November 17, 2009, the court denied Extreme's motion to dismiss, finding that the TAC alleged sufficient facts to create a reasonable doubt that a majority of Extreme's board, including Levy, was disinterested.  In its November 17, 2009 order ("Nov. Order"), the court held that evidence of Levy's knowing involvement in backdating at KLA-Tencor suggested that Levy was knowingly involved in backdating at Extreme and, combined with other allegations in the TAC, provided sufficient facts to reasonably doubt Levy's disinterestedness.  Nov. Order at 15-16.

Extreme now moves for reconsideration of the Nov. Order, or in the alternative, a stay and certification of the Nov. Order for interlocutory appeal.

## II. ANALYSIS

### A.     Motion for Reconsideration

Reconsideration is appropriate only when there is: (1) newly discovered evidence, (2) a change in controlling law, or (3) the need to correct clear error or to prevent manifest injustice. *School Dist. No.1J v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Local Rule 7-9 allows parties to seek leave to file a motion for reconsideration when there has been a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court."

Extreme does not allege newly discovered evidence or a change in the controlling law. Its motion for reconsideration is based on its claim that the court clearly erred by manifestly failing to consider: (1) the fact that Levy did not serve on Extreme's Compensation and Audit Committees until after the issuance of the alleged backdated stock options and thus had no opportunity to engage in backdating at Extreme; (2) established case law concerning the standard for pleading demand futility; and (3) the court's own Sept. Order.

#### 1.     Levy's Opportunity to Engage in Backdating at Extreme

Extreme contends that Levy could not have been involved in the alleged stock option backdating at Extreme because all of the alleged backdating occurred prior to fiscal year 2005, and Levy did not serve on Extreme's Compensation and Audit Committees until fiscal year 2005. In the Nov. Order, the court held that, other than the five stock option grants that occurred on January 10, 2000, June 1, 2000, April 9, 2001, October 2, 2001, and December 28, 2001, plaintiffs had not alleged facts sufficient to raise a reasonable inference of backdating. Nov. Order at 5, 12-13. The parties agree that Levy did not serve on the Compensation and Audit Committees under fiscal year 2005, long after these allegedly backdated grants took place.

The TAC erroneously states that Levy served on these committees in fiscal year 2004, TAC ¶¶ 34, 206(e)(i) n.16, and citing the TAC, the court's Nov. Order also incorrectly stated that Levy was on the Compensation Committee and Audit Committee in fiscal year 2004, Nov. Order at 3. However, this error was harmless, as the court did not rely upon Levy's membership on these

ORDER DENYING EXTREME'S MOTION FOR RECONSIDERATION AND FOR STAY OF ACTION AND CERTIFICATION OF APPEAL — No. C-07-02268-RMW
CCL                                                              3

committees in reaching its conclusion that plaintiffs had alleged sufficient facts to create a reasonable doubt regarding Levy's disinterestedness. Instead, the court based its holding on the specific details in the TAC regarding Levy's conduct at KLA-Tencor combined with his service as an Extreme board member beginning in October 2001. Nov. Order at 15-16. As discussed above, the court found that plaintiffs had alleged sufficient facts to create a reasonable inference of backdating with respect to the December 28, 2001 stock option grant. *Id.* at 5, 12-13. The TAC alleges that Extreme's board of directors "ultimately had to approve all option grants."[1] TAC ¶ 209. Since Levy was a member of the board of directors at the time when the December 28, 2001 stock option grant was approved, the court rejects Extreme's contention that Levy could not have been involved in any of the alleged backdating.

The court recognizes that "board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008). However, the court did not rely upon Levy's approval of an allegedly backdated stock option grant alone in reaching its conclusion that demand futility had been adequately pled; rather, the court considered specific factual allegations in the TAC that strongly supported an inference that Levy was *knowingly* involved in backdating stock options at KLA-Tencor, which in turn supported an inference of Levy's *knowing* involvement in the alleged backdating at Extreme. Nov. Order at 15-16.

### 2. Established Case Law on Pleading Demand Futility

Extreme claims that the court manifestly failed to consider established case law concerning the standard for determining whether allegations suffice to impeach a director's presumed disinterestedness. In its papers, Extreme makes the bald assertion that controlling Delaware law "establishes that a director's alleged involvement in backdating at other companies could not suffice

---

[1] This statement appears to be partially incorrect based on Extreme's 10-K, which states that the board of directors delegated its authority to approve grants for 40,000 shares or less per employee so long as the employee was not an officer or director of the company. TAC Ex. 2 at 44. However, it does appear that Extreme's board of directors had to approve option grants for officers and directors, as well as for other employees when the grant was for over 40,000 shares per employee. *See* TAC Ex. 2 at 44-46. Since the December 28, 2001 option grant was to top executive officers, it appears that the board had to approve this grant. TAC ¶ 117.

to render him interested at Extreme." Mot. at 17. However, Extreme has failed to cite to any controlling Delaware cases actually supporting this proposition.

The established case law on pleading demand futility is set forth in *Rales v. Blasband,* 634 A.2d 927 (Del. 1993). In *Rales*, the Delaware Supreme Court held that demand futility has been adequately pled when a complaint "alleges particularized facts creating a reasonable doubt that a majority of the Board would be disinterested or independent in making a decision on a demand." *Id.* at 930. A plaintiff need not demonstrate a reasonable probability of success on the merits. *Id.* at 934. Moreover, directorial interest can be found when bringing suit would "have a materially detrimental impact on a director, but not on the corporation and the stockholders. In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Id.* at 936. Although "[n]ormally, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors," the Court held that directorial interest may be found when the potential for liability rises beyond "a mere threat" to the level of "a substantial likelihood." *Id.*

This court applied the standard set forth in *Rales* in reaching its holding in the Nov. Order. The court considered particularized facts alleged in the TAC, including details regarding Levy's involvement in backdating at KLA-Tencor, his membership on the Extreme board beginning in 2001, and facts indicating that the December 28, 2001 stock option grant had been backdated.[2] Nov. Order at 12-13, 15-16. From these facts, it can reasonably be inferred that Levy faced a substantial likelihood of personal liability for his conduct as an Extreme board member, such that he "cannot be expected to exercise his [] independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Rales*, 634 A.2d at 936. Thus, drawing all

---

[2] Extreme argues that Fed. R. Evid. 404(b) prohibits consideration of Levy's involvement in backdating at KLA-Tencor. However, Fed. R. Evid. 404(b) explicitly permits admission of evidence of prior acts to show intent, knowledge, and absence of mistake or accident. The court's finding that Levy's *knowing* involvement in backdating at KLA-Tencor supported an inference that he was *knowingly* involved in alleged backdating at Extreme falls within this exception. Moreover, the court is not aware of any cases suggesting that a court is limited to considering admissible evidence when determining the sufficiency of demand futility pleadings.

reasonable inferences in plaintiffs' favor, *Wood*, 953 A.2d at 140, the court found that the factual allegations in the TAC sufficed to create a reasonable doubt that Levy was disinterested.

Extreme points to *In re VeriSign*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007), as holding that "a director's alleged involvement in backdating at other companies cannot support an inference that demand on that director would have been futile." Mot. at 17. The court notes that this case is not controlling precedent, nor was it cited by Extreme in addressing allegations of Levy's involvement in backdating at other companies in its motion to dismiss the TAC. *Id.* at 17 n.10. Regardless, *VeriSign* is distinguishable from this case and does not stand for such a sweeping proposition. In *VeriSign*, plaintiffs alleged that various directors were disinterested because they had been implicated in options backdating at other companies. 531 F. Supp. 2d at 1201. However, plaintiffs' only argument was that "an agreement by a VeriSign director to sue the individual defendants on the Company's behalf might be considered an 'admission' that the same conduct by that director at another company was unlawful." *Id.* The *VeriSign* court found this particular line of reasoning to be "highly speculative" and "irrelevant to the question whether a director on the VeriSign Board is capable of acting independently of other directors or majority shareholders at VeriSign." *Id.* This holding does not indicate that a director's knowing involvement in backdating at other companies is always irrelevant to demand futility.

Adequate pleading of demand futility is a fact-specific determination. *See Beam*, 845 A.2d at 1049. Courts are to consider the alleged facts in the context of a specific case to determine whether they create "a reasonable doubt that a majority of the Board would not be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930. In this case, the court found Levy's conduct at KLA-Tencor to be relevant, not because bringing suit at Extreme could be considered an admission that his conduct at KLA-Tencor was unlawful, but because evidence of his knowing involvement in backdating at KLA-Tencor permits the reasonable inference that he was knowingly involved in backdating at Extreme. Accordingly, this court's holding that demand futility was adequately pled in the TAC, based in part on allegations regarding Levy's conduct at KLA-Tencor, does not conflict with the holding in *VeriSign*.

### 3. September Order

Extreme argues that the Nov. Order conflicts with the court's earlier Sept. Order, which denied plaintiffs' motion for reconsideration regarding dismissal of the SAC. In the Sept. Order, the court noted that it had not discussed plaintiffs' allegations about Levy's board position at other companies facing backdating allegations in other lawsuits because "the court did not find them critical to its decision." Sept. Order at 3 n.1. According to Extreme, the TAC alleged no new facts regarding Levy's conduct at KLA-Tencor, and thus the court's Nov. Order – which relies in part on Levy's alleged involvement in backdating at KLA-Tencor – conflicts with its Sept. Order.

Contrary to Extreme's assertion, the TAC does contain new factual allegations relating to Levy's conduct at KLA-Tencor. Although the difference in the facts pleaded in the SAC and the TAC is not great, the TAC includes the additional allegation that KLA-Tencor admitted to *intentional* backdating. TAC ¶ 206(e)(iv). Moreover, statements in KLA-Tencor's 10-K, which is attached to the TAC, suggest that Levy, in particular, was knowingly involved in the backdating at KLA-Tencor. *See* TAC Ex. 3 at 8-9. The Nov. Order highlights these new facts as playing a role in the court's decision: "Plaintiffs have provided more specific details [in the TAC] regarding Levy's conduct at KLA-Tencor. The revelations in KLA-Tencor's Form 10-K strongly support an inference that Levy was knowingly involved in backdating stock options at that company." Nov. Order at 15. In light of the new facts alleged in the TAC suggesting Levy's *knowing* involvement in backdating at KLA-Tencor, the court gave more significance to the allegations about Levy's involvement at other companies in considering the motion to dismiss the TAC. Therefore, there is no conflict between the Nov. Order and the Sept. Order.

### B. Certification for Interlocutory Appeal

A district court may certify an order for interlocutory appeal when the order involves: (1) a controlling question of law as to which there is (2) a substantial ground for difference of opinion, and (3) where an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). In determining whether a substantial ground for difference of opinion exists, it is worth noting that 28 U.S.C. § 1292 was intended to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive

ORDER DENYING EXTREME'S MOTION FOR RECONSIDERATION AND FOR STAY OF ACTION AND CERTIFICATION OF APPEAL — No. C-07-02268-RMW
CCL                                 7

litigation." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982) (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)). "It was not intended merely to provide review of difficult rulings in hard cases." *U.S. Rubber Co.*, 359 F.2d at 785.

Extreme argues that there is a substantial ground for difference of opinion on the issue of whether a director's conduct at another company can be considered in a demand futility motion based on "the apparent conflict between this Court's own orders as well as the intra-district conflict between the Order and *Verisign*." Mot. at 21. As explained above, there is no conflict, either between the court's own orders or between the court's Nov. Order and the decision in *VeriSign*. Therefore, Extreme has failed to demonstrate a basis for finding a substantial ground for difference of opinion on this issue.

### III.  ORDER

For the foregoing reasons, the court denies Extreme's motion for reconsideration as well as its motion for a stay and certification for interlocutory appeal.

DATED:     4/2/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Alan Roth Plutzik | aplutzik@bramsonplutzik.com |
| Emanuel Shachmurove | mshachmurove@sbtklaw.com |
| Eric L. Zagar | ezagar@btkmc.com |
| Lawrence Timothy Fisher | ltfisher@bramsonplutzik.com |
| Robert Bramson | rbramson@bramsonplutzik.com |
| Aelish Marie Baig | AelishB@csgrr.com |
| Shawn A. Williams | shawnw@csgrr.com |
| Frank James Johnson | frankj@johnsonbottini.com |
| Lucas F. Olts | Lolts@csgrr.com |

**Counsel for Defendants:**

| | |
|---|---|
| John Henry Hemann | jhemann@morganlewis.com |
| Jonathan DeGooyer | jdegooyer@morganlewis.com |
| Joseph Edward Floren | jfloren@morganlewis.com |
| Laura Alexis Lee | llee@morganlewis.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   4/2/10                                              CCL
                                                    **Chambers of Judge Whyte**